Ryan L. Gentile, Esq.
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike - Suite 100
Floral Park, NY 11001
Tel: 201-873-7675
Attorney for Plaintiff, Nicola E. Clarke
on behalf of herself and all others similarly situated

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------X
Nicola E. Clarke, on behalf of herself
and all others similarly situated,

                    Plaintiffs,

      v.

Midland Credit Management, Inc.

                    Defendant.
-------------------------------------------------------X

**CLASS ACTION COMPLAINT**

Plaintiff, by and through her counsel, Ryan Gentile, Esq., as and for her complaint against Defendant, on behalf of herself and pursuant to Rule 23 of the Federal Rules of Civil Procedure all others similarly situated, alleges as follows:

## INTRODUCTION

1. Plaintiff, on her own behalf and on behalf of the classes she seeks to represent, brings this action to secure redress for the debt collection practices utilized by Midland Credit Management Inc. ("MCM") in connection with their attempts to collect alleged debts from Plaintiff and others similarly situated.

2. Plaintiff alleges that Defendant's collection practices violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA")

1

3. The FDCPA broadly prohibits conduct which harasses, oppresses or abuses any debtor; any false, deceptive or misleading statements in connection with the collection of a debt; unfair or unconscionable collection methods; and requires certain disclosures. *See generally* 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

4. The FDCPA is generally characterized as a "strict liability" statute because "it imposes liability without proof of an intentional violation." Glover v. FDIC, 698 F.3d 139 (3d. Cir. 2012) (citing Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 & n. 7 (3d Cir. 2011).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's FDCPA claim pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6. Venue and personal jurisdiction in this District are proper because:

    a. The acts giving rise to this lawsuit occurred within this District; and

    b. Defendant does business within this District.

## PARTIES

7. Plaintiff, Nicola E. Clarke is an individual natural person who at all relevant times resided in the City of Bergenfield, County of Bergen, State of New Jersey.

8. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

9. MCM is a Kansas Corporation with its principal place of business located at 350 Camino De La Reina, Suite 100 San Diego, CA 92108.

10. The principal purpose of MCM is the collection of debts using the mail and telephone.

11. MCM is a purchaser of defaulted debt.

12. Part of MCM's business model is to pay less than ten cents on the dollar for a defaulted debt and then seek to collect the full amount.

13. Part of MCM's collection practices includes filing lawsuits against New Jersey residents seeking to collect debts that MCM allegedly purchased after the debts went into default.

14. Debt collection is the principal purpose of MCM's business.

15. MCM has no principal purpose other than the collection of debts.

16. MCM does not offer or extend credit, they only purchase defaulted debt and then attempt to collect said debt and/or attempt to collect debts owed to one of their affiliates.

17. MCM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

18. MCM's website states, "Midland Funding LLC owns consumer debt obligations. Midland Credit Management (MCM) is a debt collector that services accounts owned by Midland Funding. However, MCM also purchases and owns some of the accounts its services." (https://www.midlandcredit.com/faqs/)(Last Visited April 8, 2020)

19. MCM is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTS

20. Sometime prior to February 1, 2019, Plaintiff allegedly incurred a debt to Capital One Bank (USA), N.A. ("Capital One") related to a personal credit card account with an account number ending in 9585 (the "Debt").

21. The Debt arose out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, namely fees emanating from a personal credit card account in Plaintiff's name that was issued by Capital One.

22. The Debt arose out of a credit card account which Plaintiff opened and used for her personal use.

23. Plaintiff's credit card account that was issued by Capital One was neither opened nor used by Plaintiff for business purposes.

24. Plaintiff's personal credit card account Debt to Capital One is a "debt" as defined by 15 U.S.C. § 1692a(5).

25. Sometime after the incurrence of the Debt, but before the initiation of this action, Plaintiff was alleged to have fallen behind on payments owed on the alleged Debt.

26. The alleged Debt went into default pursuant to the terms of the agreement creating the Debt and/or by operation of law.

27. After the alleged Debt went into default pursuant to the terms of the agreement creating the Debt and/or by operation of law, the Debt was allegedly sold by Capital One to MCM.

28. The Debt was in default when it was allegedly purchased by MCM.

29. MCM claims that they purchased the Debt and are now the entity to whom the Debt is owed.

30. MCM contends that the Debt is in default.

31. At all times relevant hereto, MCM acted in an attempt to collect the Debt.

32. On or about April 10, 2019, MCM mailed or caused to be mailed a letter to Plaintiff (the "First Letter"). (Annexed and attached hereto as <u>Exhibit A</u> is a copy of the First Letter dated April 10, 2019 that MCM mailed or caused to be mailed to Plaintiff, except the undersigned counsel has in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and Plaintiff's street address to protect her privacy)

33. MCM mailed the First Letter dated April 10, 2019 as a part of their efforts to collect the Debt.

34. Plaintiff received the First Letter in the mail.

35. Plaintiff read the First Letter upon receipt of it in the mail.

36. The First Letter was sent in connection with the collection of the Debt.

37. The First Letter seeks to collect the Debt.

38. The First Letter conveyed information regarding the Debt including the Current Balance, MCM Account number, and a request for payment.

39. The First Letter is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

40. The First Letter is the first written letter or notice that MCM sent to Plaintiff regarding the Debt.

41. The First Letter attached as <u>Exhibit A</u> states in relevant part on the first page under the "Account at a Glance" heading:

_____
**Reply By**
**5/25/2019**
**Call 877-452-7959**
Mon-Fri: 5am – 9pm PT
Sat-Sun: 5am – 4:30 PT

42. The wording of the First Letter referenced in the preceding paragraph is separated from other wording in the First Letter by a solid line that separates it from other parts of the First Letter and places the wording in its own box.

43. On or about May 26, 2019, MCM mailed or caused to be mailed a letter to Plaintiff (the "Second Letter"). (Annexed and attached hereto as <u>Exhibit B</u> is a copy of the Second Letter dated May 26, 2019 that MCM mailed or caused to be mailed to Plaintiff, except

5

the undersigned counsel has in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and Plaintiff's street address to protect her privacy)

44. MCM mailed the Second Letter dated May 26, 2019 as a part of their efforts to collect the Debt.

45. Plaintiff received the Second Letter in the mail.

46. Plaintiff read the Second Letter upon receipt of it in the mail.

47. The Second Letter was sent in connection with the collection of the Debt.

48. The Second Letter seeks to collect the Debt.

49. The Second Letter conveyed information regarding the Debt including the Balance Due, MCM Account number and a request for payment.

50. The Second Letter is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

51. The Second Letter attached as <u>Exhibit B</u> states in relevant part:

> Congratulations! You have been <u>pre-approved</u> for a discount program designed to save you money. Act now to maximize your savings and put this debt behind you by calling 877-653-5260.
>
> (Emphasis in original)

52. Below the language in the preceding paragraph, the Second Letter provides Plaintiff with three options for the Second Letter's referenced "discount program":

> Option 1: 10% off
>
> Option 2: 5% off
>
> Option 3: Monthly Payments As Low As $50 per month

53. The above language provided by MCM concerning Option 3 is ambiguous as to whether this is a third discount option or a path to full payment. Option 3 on its own appears to be a path to full payment, but after reading the statement in the Second Letter that Plaintiff

6

was pre-approved for a "discount program", and seeing three options that were presumably part of the referenced "discount program", the consumer would reasonably believe that Option 3, like Option 1 and 2, was a discount option that was part of the "discount program" the Second Letter stated that Plaintiff was pre-approved for.

54. In reality, Option 3 is not a discount offer but rather a path to full repayment of the Debt.
55. MCM's collection practice is a high-volume practice.
56. MCM's debt collection practice is largely automated and utilizes standardized form letters.
57. Documents in the form represented by Exhibit A are regularly sent by MCM to collect debts.
58. Exhibit A is a standardized form letter.
59. Exhibit A is a letter that is generated by MCM by imputing a consumer's information into a computer program which then prints a letter in the form of Exhibit A to Plaintiff's Complaint with that consumer's information contained therein.
60. MCM mailed or caused to be mailed letters in the form of Exhibit A over the course of the past year to hundreds of New Jersey consumers from whom MCM attempted to collect a consumer debt.
61. Documents in the form represented by Exhibit B are regularly sent by MCM to collect debts.
62. Exhibit B is a standardized form letter.
63. Exhibit B is a letter that is generated by MCM by imputing a consumer's information into a computer program which then prints a letter in the form of Exhibit B to Plaintiff's Complaint with that consumer's information contained therein.

64. MCM mailed or caused to be mailed letters in the form of <u>Exhibit B</u> over the course of the past year to hundreds of New Jersey consumers from whom MCM attempted to collect a consumer debt.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

65. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

66. The conduct of the Defendant in this case violates 15 U.S.C. §§ 1692 and 1692e(10), 1692g, 1692g(b).

67. 15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

68. 15 U.S.C. §1692g(b) provides

**(b) Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be

inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

69. Collection letters and/or notices, such as <u>Exhibit A</u> and <u>Exhibit B</u> sent by Defendant to Plaintiff, are to be evaluated by the objective standard of the "least sophisticated consumer."

70. The First Letter violates 15 U.S.C. §1692g(b) because it instructs Plaintiff to "Reply By 5/25/2019", and this language overshadows the validation notice in the same letter. The First Letter does not specify what exactly Plaintiff needs to reply to by May 25, 2019, nor is the language attached to any other part of the First Letter because the language in question is in its own box in the First Letter. In the absence of anything specific MCM was instructing Plaintiff to reply to by May 25, 2019 (such as, for example, a settlement offer or other deadline for a certain action), the reasonable inference is that MCM was instructing Plaintiff to respond to the First Letter itself by May 25, 2019. Any reasonable person who recieves a letter telling them to reply by a certain date, but not detailing anything specific to reply to by the date in question, would naturally think that the date in question would be the deadline to respond to the letter itself. The First Letter contained the validation notices required by §1692g. Pursuant to §1692g, Plaintiff had thirty days from receiving the First Letter to dispute the Debt and/or request verification of it. May 25, 2019 is more than 30 days from the date Plaintiff received the First Letter. Therefore, MCM's instruction in the First Letter to "Reply By 5/25/2019" overshadowed the debt validation notice contained in the same letter because the language specifically instructed Plaintiff to reply to the First Letter by May 25, 2019, which is a date that is more than 30 days from the date Plaintiff received the First Letter. If Plaintiff or any other consumer followed MCM's instructions in the First Letter and replied to said letter by invoking the

validation notice rights disclosed therein on May 25, 2019, they would have lost their rights under §1692g because the dispute or request for verification of the debt would not have been timely.

71. The First Letter also violates 15 U.S.C. §1692e(10) because it is confusing and misleading. For example, suppose a consumer received the First Letter on April 13, 2019, that consumer could read the validation notice on the back of the First Letter to mean that they have until May 13, 2019 to reply by disputing the debt. However, the front of the First Letter *specifically instructs them* that they need to respond to the letter – containing the validation notice – by May 25, 2019.  Any reasonable consumer could then follow the First Letter's instructions and wait until May 25, 2019 to reply to the First Letter and its validation notice and thus lose their rights under §1692g. The First Letter is therefore open to multiple interpretations, specifically as to when to respond to the letter containing the validation notice, and therefore the Letter violates §1692e(10).

72. The First Letter also violates 15 U.S.C. §1692e because the May 25, 2019 deadline is an artificial one. There is nothing specific the First Letter instructs a consumer to respond to by May 25, 2019. For example, the First Letter contains no settlement offer or any other offer or thing or deadline that is due or occurs on or by May 25, 2019. The May 25, 2019 deadline is simply an artificial deadline meant to make a consumer think there is some negative consequence that will occur if the debt is not paid by May 25, 2019. The May 25, 2019 deadline is not a real deadline but rather an artificial one that means nothing and is therefore deceptive and misleading.

73. The Second Letter violates 15 U.S.C. §1692e(10) because it is confusing and misleading. The Letter is confusing and misleading because it tells Plaintiff that she was approved for

a "discount program" and then lists three supposed discount options. Given that the Second Letter fails to unequivocally state that Option 3 is not a discount offer or part of any "discount program" but rather an option to pay the full account balance, the least sophisticated debtor reading the entire Second Letter could reasonably understand Option 3 to be a settlement option and part of the referenced "discount program" when in reality it is not. *See* Knight v. Midland Credit Mgmt, Inc. 755 Fed. App'x 170, 176 (3d Cir. 2018).

74. Since a least sophisticated consumer could read Option 3 as a settlement offer and part of the Second Letter's referenced "discount program" when it is actually not, the Second Letter is therefore open to multiple interpretations, one of which is inaccurate, and therefore the Second Letter violates §1692e(10).

75. The ambiguity in telling consumers they are pre-approved for a discount program and providing them three options for the supposed "discount program" but not telling consumers that Option 3 is not a discount but rather would result in payment of the full amount of the balance, is material because it may affect whether a debtor makes a payment and which option he or she chooses. *See* Knight v. Midland Credit Mgmt, Inc. 755 Fed. App'x 170, 176 (3d Cir. 2018)

76. The violations of the FDCPA described herein constitute *per se* violations.

77. Plaintiff has alleged a particularized injury because the First Letter and Second Letter were both mailed and directed to her.

78. Plaintiff has alleged a concrete harm because the FDCPA creates a substantive right to be free from abusive debt communications and Defendant's violations of the FDCPA resulted in concrete harm to Plaintiff.

79. Defendant is liable to the Plaintiff and the proposed classes pursuant to 15 U.S.C. § 1692k because of the above FDCPA violations.

**CLASS ALLEGATIONS**

80. Plaintiff incorporates by reference all the above paragraphs as though fully stated herein.

81. This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of the following two classes of persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

82. Class A is initially defined as (a) all consumers (b) with a New Jersey address (c) to whom MCM sent an initial collection letter which is materially identical or substantially similar to First Letter attached as <u>Exhibit A</u> to the Complaint (d) which letter sought to collect a debt originally owed to Capital One (e) which letter was not returned as undeliverable (f) on or after a date one year prior to the filing of this action; and (g) which letter included the alleged conduct and practices described herein.

83. Class B is initially defined as (a) all consumers (b) with a New Jersey address (c) to whom MCM sent a letter which is materially identical or substantially similar to Second Letter attached as <u>Exhibit B</u> to the Complaint (d) which letter sought to collect a debt originally owed to Capital One (e) which letter was not returned as undeliverable (f) on or after a date one year prior to the filing of this action; and (g) which letter included the alleged conduct and practices described herein.

84. The class definitions above may be subsequently modified or refined in an amended complaint or in any motion for class certification.

85. The proposed classes specifically exclude the United States of America, the states of the Third Circuit, counsel for the parties, the presiding United States District Court Judge, the

Judges of the United States Court of Appeals for the Third Circuit and the United States Supreme Court.

86. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    i. **Numerosity**: The Plaintiff is informed and believes and on that basis alleges, that the classes defined above are so numerous that joinder of all members would be impracticable. Upon information and belief, based on the fact that the Complaint involves form collection letters, there are at least 40 members of each class. The exact number of class members in each class is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery. The classes are ascertainable in that the names and addresses of all class members can be identified in business records maintained by the Defendant.

    ii. **Common Questions Predominate**: There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) The existence of the Defendant's identical conduct particular to the matter at issue; (b) Defendant's violations of the FDCPA, specifically 15 U.S.C. §1692e and 15 U.S.C. §1692g; (c) The availability of statutory penalties; and (d) Attorneys' fees and costs.

iii. **Typicality**: The claims of the Plaintiff are typical of those of the classes they seek to represent. The claims of the Plaintiff and the members of each class originate from the same conduct, practice, and procedure, on the part of the Defendant. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts. Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed classes. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

iv. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the classes and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of each class. Plaintiff is willing and prepared to serve this Court and the proposed classes. The interests of the Plaintiff are co-extensive with and not antagonistic to those of the absent class members. Plaintiff has retained the services of counsel who are experienced in FDCPA litigation and will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members. Neither the Plaintiff nor their counsel have any interests which might cause them to not vigorously pursue the instant class action lawsuit.

v. **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members of both classes would be impracticable. Class

action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Furthermore, a class action is superior for the fair and efficient adjudication of this matter because individual actions are not economically feasible, members of the classes are likely to be unaware of their rights or that they were violated, and Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**WHEREFORE**, the Court should enter judgment in favor of Plaintiff and the classes and against Defendant for:

1. An order certifying that Count I may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the classes previously set forth and defined above.

2. Adjudging that Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g, and 1692g(b).

3. An award of statutory damages for Plaintiff and the class members pursuant to 15 U.S.C. §1692k;

4. Attorneys' fees, litigation expenses and costs of suit pursuant to 15 U.S.C. §1692k; and

5. Such other and further relief as the Court deems proper.

Dated: Floral Park, New York
      April 8, 2020

By: /s/ Ryan Gentile
_____
Ryan Gentile, Esq.
*Attorney for Plaintiff*
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Tel: (201) 873-7675
Fax: (516) 305-5566
rlg@lawgmf.com